STATE OF VERMONT

SUPERIOR COURT
Vermont Unit

ENVIRONMENTAL DIVISION
Docket No. 169-12-13 Vtec

| | |
|---|---|
| Marble Dealership Realty LLC Site Plan Approval | DECISION ON THE MERITS |

In this on-the-record appeal, Marble Dealership Realty, LLC (Applicant) challenges the 60-foot height limitation placed on its proposal to install an 80-foot-tall flagpole at its motor vehicle sales business at 800 Putney Road in Brattleboro, Vermont. Prior to the application at issue here, the Town of Brattleboro Development Review Board (DRB) permitted substantial redevelopment at Applicant's property, including a new 20- to 25-foot-tall building for Applicant's business.[1] On September 24, 2013, Applicant applied for a zoning permit to install an 80-foot-tall flagpole for a 600-square-foot American flag at its business. On October 21, 2013, the DRB held a hearing on the flagpole application and voted to approve it with the condition that the flagpole be no more than 60 feet in height. The DRB issued its written Decision, including Findings of Fact and Conclusions of Law, on November 12, 2013. Applicant filed a timely appeal.

Applicant is represented by Sarah Biolsi Vangel, Esq.; the Town of Brattleboro (the Town) is represented by Robert M. Fisher, Esq.

### Discussion

Applicant argues that the DRB exceeded its authority in restricting the flagpole height through its site plan review of the proposed flagpole. Specifically, Applicant argues (1) that the flagpole is excluded from the definition of "land development" which requires a zoning permit

---

[1] The prior redevelopment permit is not before us. The DRB's November 12, 2013 decision on the flagpole notes that on June 13, 2013, the DRB authorized substantial redevelopment (permit #2012-114) and that the permit was amended on March 29, 2013 (permit #2013-031). Marble Dealership Realty, LLC, No. 2013-184, Findings of Fact, Conclusions of Law, and Decision, at 2 (Town of Brattleboro Dev. Review Bd. Nov. 12, 2013). The permit and/or amendment date(s) may be in error; otherwise the amendment date would have been prior to the original permit date. In any event, these dates do not impact our decision here.

under the Town of Brattleboro Zoning Ordinance; (2) that even if a permit is required for the flagpole, site plan approval is not required; and (3) that even if site plan approval is required, the DRB's decision was clearly erroneous, arbitrary, and capricious. (Applicant's Brief at 5–9, filed Apr. 15, 2014.) The Town argues that the DRB properly considered and decided the flagpole application under its authority to conduct site plan review for "land development." (Town's Brief at 8, filed May 16, 2014.) In its review, the DRB "considered the flagpole as an element of the landscaping, reviewing the aesthetics of the pole, its architectural compatibility and its harmonious relationship to the townscape." Marble Dealership Realty, LLC, No. 2013-184, Findings of Fact, Conclusions of Law, and Decision, at 3 (Town of Brattleboro Dev. Review Bd. Nov. 12, 2013). Noting that an 80-foot flagpole would be a "significant departure" from the existing townscape, the DRB concluded that the flagpole could be "no taller than the maximum height permitted for buildings in the district" and conditioned approval of the flagpole on it being a maximum of 60 feet tall. Id.

## I.       Standard of Review

In an on-the-record appeal, we review only the municipal panel's decision, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or complete our own determination of the facts. Instead, this Court will uphold the DRB's factual findings if they are supported by substantial evidence in the record. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568. We review the DRB's legal conclusions without deference unless such conclusions are within the DRB's area of expertise. Id.

We interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear it must be enforced and no further interpretation is necessary. Vermont Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing Hill v. Conway, 143 Vt. 91, 93 (1983)).

2

**II.      Review of Proposed Flagpole**

Applicant's Statement of Questions asks whether the DRB had the authority to impose the height limitation on the flagpole pursuant to various provisions of the Town of Brattleboro Zoning Ordinance (BZO).   In answering Applicant's questions, we first consider whether the flagpole was subject to the general permitting requirement of the BZO.  We then consider the DRB's authority to impose the height limitation through site plan review.

Applicant's property is located in the Commercial District and contains a motor vehicle sales business, a permitted use in that district.   BZO § 2350(b)(i).   The height limitation for buildings in the Commercial District is 60 feet.[2]  BZO § 2350(d)(i).

### a.  Land Development

Applicant's Question 2 asks:

2. Whether installation of a flag pole is "land development" subject to the permitting requirements of the Town of Brattleboro Zoning Ordinance?"

The BZO requires a zoning permit and site plan review and approval for any "Land Development" or any change in or extension of the use of any land or structure.  BZO §§ 1320, 1552.  "Land Development" is:

The division of a parcel into two (2) or more parcels; the <u>construction</u>, reconstruction, conversion, structural alteration, relocation or enlargement <u>of</u> any <u>building</u> or <u>other structure</u>, or of any mining, <u>excavation, or landfill</u>, and any <u>change in the use of</u> any building or structure or <u>land</u>, or extension of use of land.

BZO § 6100 (emphasis added).

---

[2] We note that the BZO's provisions for height limitations use inconsistent terminology, arguably requiring differing applications to buildings, structures, or other items, depending on the applicable height provision for the district at issue.  In the Commercial District, for example, the height limitation expressly applies to buildings only, whereas the height limitation provision for the Urban Center District provides:

> Building Height
> (a) The maximum height of any new <u>structure</u> in this district is sixty (60) feet.
> (b) The minimum height of any new building in this district shall be as follows . . .

BZO § 2348(d)(i) (emphasis added).

The provision for "exceptions to height limitations" provides that "[u]nless this Bylaw specifically provides to the contrary, limitations on permissible heights of <u>structures</u> shall not apply to [an enumerated list of items].  BZO § 4170.  Because we conclude that the flagpole is neither a "building" nor a "structure," our analysis is the same whether the Commercial District height limitation was meant to apply to structures generally or only to buildings.

3

We first note that the definition of "structure" specifically excludes "retaining walls, fences, poles and lamp posts . . . ." BZO § 6100 (emphasis added). Because a flagpole is a type of pole, it is not a structure under the BZO's definition. A building is a structure with a roof that is intended for shelter; the flagpole is therefore not a building. BZO § 6100.

We also note that shortly before Applicant's flagpole application, the DRB approved building reconstruction at Applicant's property for its continued use as a motor vehicle sales business. Applicant's proposed flagpole is part of its motor vehicle sales use and does not enlarge the size of Applicant's building or its business operation. We therefore conclude that the proposed flagpole is not a change in or extension of Applicant's permitted motor vehicle sales use.

The Town argues that because the flagpole must be placed approximately eight feet deep in the ground, along with nine to ten yards of cement to stabilize it, the flagpole installation is "excavation" and "landfill" falling under the "land development" permit requirement of the BZO. (Town's Brief at 8, filed May 16, 2014.) "Landfill" is defined as "[a]n area where solid waste is disposed of in a controlled, managed manner; the filling of an area with clean fill or other suitable materials." BZO § 6100. The placement of a flagpole in the ground with an adequate concrete footing is therefore not "landfill." While the BZO does not define "excavation," it defines "Excavation/Quarry" as "[t]he activity and location of extraction of soil, sand, or other materials . . . [which] usually involve heavy equipment and may cause high levels of noise and dust." BZO § 6100 (emphasis added). The BZO also provides specific standards for "Excavation/Quarry," requiring the DRB to make positive findings on 10 criteria prior to issuance of a permit for "the removal of stone, sand or gravel from banks or quarries and the processing of said materials." BZO § 5120. The DRB made no findings or conclusions regarding any "excavation" or "landfill" associated with the proposed flagpole.[3] Although the flagpole will require an adequate in-ground footing, we conclude on the limited evidence in the

---

[3] Decisions afforded on-the-record review must include complete findings of fact in order "to make a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." In re Appeal of Leikert, No. 2004-213, slip op. at 1–2 (Vt. Nov. 2004 term) (unpublished mem.), available at https://www.vermontjudiciary.org/UPEO2001-2005/eo04-213.pdf (discussing the important functions served by findings of fact). This Court has been cautioned against "fill[ing] in the gaps" left by incomplete decisions. Id. at 2.

record[4] that the digging and filling for this footing does not fit the plain meaning of "excavation" or "landfill" as used in the "Land Development" definition.

Because the proposed flagpole is neither a structure, nor excavation, nor landfill, nor a change in or extension of use, we conclude that the proposed flagpole is not "land development" or a change in the use of land requiring a zoning permit under BZO § 1320.

As discussed below, however, a proposed item that is not itself "land development" may be considered as an element of a proposed site plan. Thus, we next consider the flagpole under the BZO's site plan review provisions.

**b. Site Plan Review**

Several of Applicant's questions, taken together, ask whether the DRB had authority to consider the flagpole under site plan review and, if so, whether the DRB appropriately considered and conditioned the height of the flagpole as part of its site plan approval.

The Site Plan Review Bylaw (bylaw) within the BZO provides:

> Application. Prior to issuance of a zoning permit for any land development, such proposed land development shall receive site plan review and approval as set forth herein, unless specifically exempted under Section 1553, below. Any proposal to eliminate, create new or alter existing structures, parking, circulation, landscaping, lighting, drainage, screening, or any other site plan element or standard, shall be subject to site plan review and approval.

BZO § 1552 (emphasis added). The flagpole is a "site plan element" that should have been considered as an amendment to Applicant's site plan approval for redevelopment. Indeed, the site plan submission requirements are quite broad, including "[i]dentification of all work to be done, including detailed changes that are proposed to the physical features of the site or existing structures." See BZO § 1556(a)(9), (b)(2) (setting forth submission requirements for minor and major site plan review). Thus, we consider whether the DRB had authority to regulate the height of the flagpole in considering the flagpole as an amendment to Applicant's site plan for the redevelopment.

The purpose of site plan review is to "protect the health, safety, convenience and general welfare of the inhabitants of the Town." BZO § 1551. The bylaw "regulates the development of

---

[4] The application before the DRB included a diagram depicting an 80-foot-tall flag with an in-ground footing approximately eight feet deep and six feet wide. (Exhibit 1 at 3.)

5

structures and sites in a manner which considers the following concerns and, where necessary, requires modification of development proposals to eliminate or minimize potential problems and nuisances." Id. The "principal areas of concern," as may be applicable here, include:

a. The balancing of landowners' rights to use their land, with the corresponding rights of abutting and neighboring landowners to live without undue disturbances (e.g. noise, smoke, fumes, dust, odor, glare, stormwater runoff, etc.);

b. . . .

c. . . .

d. The protection of historic and natural environmental features on the site under review, and in adjacent areas.

Id.

Under the Site Plan Standards for Review, "the Board shall take into consideration, and may impose appropriate conditions and safeguards with respect to [a list of criteria]." BZO § 1557. The criteria are broken up into four categories: (a) traffic and pedestrian access; (b) circulation and parking; (c) landscaping and screening; and (d) protection of the utilization of renewable energy resources. Id. Subsection (c), the landscaping and screening category, directs the DRB to consider:

3. The building setbacks, area and location of parking, architectural compatibility, signage, and landscaping of the development, and how these features harmonize with the surrounding townscape and natural landscape.

5. Proper design for drainage, fire protection, outdoor lighting, aesthetics, and similar site factors that are related to the above aspects of landscaping and screening.

BZO § 1557(c).

The DRB made findings of fact related to subsection (c). Specifically, the DRB found that "[t]he proposal will impact lighting, landscaping and how the property harmonizes with the surrounding townscape." Marble Dealership Realty, LLC, No. 2013-184, Findings of Fact, Conclusions of Law, and Decision, at 2 (Town of Brattleboro Dev. Review Bd. Nov. 12, 2013). While this statement rests in part on evidence in the record, it also incorporates an interpretation of the Site Plan Standards for Review, which, along with other legal conclusions, we review without deference. See Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568.

6

We read the requirements of subsection (c) to address the adequacy and design of landscaping, such as existing and proposed trees and other vegetation, as well as design aspects related to such landscaping, including drainage and lighting. Although the BZO does not define "landscaping," we conclude that the proposed flagpole does not fit the ordinary meaning and use of "landscaping." The BZO expressly addresses landscaping-related elements, such as drainage and lighting[5], but it makes no mention of other items to be placed on a site, such as flagpoles or other decorative items.

The BZO's General Standards support this interpretation. Within the General Standards, the purpose section of "Landscaping and Screening; Drainage and Lighting" states, "[l]andscaping can play a major role in the reduction of noise, glare and other nuisances from one use to another." BZO § 4310. The section further states, "[l]andscaping, as referred to in this Bylaw, shall include provisions for adequate on-site and off-site drainage, as well as lighting of the entire site and its structures." Id. The General Standards for landscaping include requirements for vegetative plantings, fences, berms, screening of service areas, drainage, and lighting. BZO §§ 4340–4350. In viewing the BZO as a whole, we conclude that the proposed flagpole, though likely to be a prominent feature of Applicant's property, will not itself be an element of landscaping such as those items discussed in the General Standards.

Moreover, we find no ground for a height limitation among any of the considerations outlined for landscaping in site plan review or the other site plan review criteria (traffic and pedestrian access, circulation and parking, and protection of the utilization of renewable energy resources). While the DRB has authority to review and impose conditions related to Applicant's landscaping, screening, and setbacks, such as requiring plantings of a certain height or in certain locations, the site plan review bylaw makes no reference to limiting the height of other proposed items at the site. Other than the 60-foot height limitation for buildings in the Commercial District, we find no applicable height limitations in the Site Plan Review bylaw or any other provisions of the BZO.

Therefore, considering the flagpole as an amendment to Applicant's site plan for redevelopment, we find no authority for imposing the 60-foot height restriction.

---

[5] The Court notes that the DRB also addressed the lighting component of the flagpole proposal. The parties do not appear to dispute the issue of lighting, and we therefore do not address it here.

7

## Conclusion

For the reasons stated above, we conclude that the flagpole is not "land development." Assuming that the flagpole may be considered as a site plan element subject to review, we also conclude that the flagpole does not fit the common meaning of landscaping or the meaning of landscaping within the BZO. We therefore ultimately conclude that neither the Site Plan Review Bylaw nor any other part of the BZO provides the DRB with authority to impose the 60-foot height limitation on the flagpole.[6]

Accordingly, condition number 4 of the DRB's November 12, 2013 decision limiting the height of the flagpole to 60 feet is **STRICKEN**.

A judgment order accompanies this decision. This completes the current proceedings before this Court.

Electronically signed on August 13, 2014 at 10:51 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[6] We do not suggest that the Town is prohibited from regulating the height flagpoles such as the one proposed; rather, we conclude that the BZO, as written, does not provide the DRB authority to impose the height limitation at issue.